UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RICARDO K. STUBBS,

        Plaintiff,

v.

MICHAEL BROWN et al.,

        Defendants.
_____/

Case No. 2:23-cv-171

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a prior order, the Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 7.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Brown. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Valle: Fourteenth Amendment due process and equal protection claims, and claims regarding the violation of the MDOC's policies and procedures. Any intended state law claims will be dismissed without prejudice. Plaintiff's First Amendment claim against Defendant Valle regarding the

rejection of his magazines will remain in the case. Plaintiff's request for a preliminary injunction (ECF No. 1, PageID.7) will be denied without prejudice.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Thumb Correctional Facility (TCF) Lapeer, Lapeer County, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following KCF officials: Warden Michael Brown and Mailroom Staff Rachael Valle. (Compl., ECF No. 1, PageID.1.).

In Plaintiff's complaint, he alleges that on April 1, 2021, he ordered magazines, and the order was approved by non-party Prison Counselor Kanaz. (*Id.*, PageID.3.) Plaintiff's attachments indicate that the magazines in question were from "Goat Magazine." (*See, e.g.*, ECF No. 1-2, PageID.21.) At an unspecified time, Plaintiff spoke with Defendant Brown when Brown was making rounds in Plaintiff's unit. (Compl., ECF No. 1, PageID.3.) "Defendant Brown informed Plaintiff that a memorandum was circulated to the Mailroom, prohibiting Plaintiff's magazines," and Defendant Brown instructed Plaintiff to write Brown "with the facts pertaining to the date in which Plaintiff ordered his magazines[;] [t]hat if they were ordered prior to the memorandum, Plaintiff's magazines would be grandfathered in." (*Id.*) Plaintiff then wrote to Defendants Brown and Valle, as well as non-party Prison Counselor McBride, requesting a copy of the memorandum that Defendant Brown had referenced. (*Id.*) Plaintiff did not receive a copy of the memorandum. (*See id.*, PageID.4.)

Plaintiff received a "Notice of Package/Mail Rejection" for the dates of May 14, 2021, and August 18, 2021, which was issued by Defendant Valle. (*Id.*; ECF No. 1-2, PageID.22.) Plaintiff alleges that the magazines were sent through the United States Postal Service and "did not pose a

2

threat to the safety or security of the facility," and he claims that "the mail conformed with the MDOC policy and procedures." (Compl., ECF No. 1, PageID.4.) Further, Plaintiff claims that "the document was never re-reviewed with [him,] providing him with proper notice of any subsequent hearing." (*Id.*)

Plaintiff alleges that "[t]he defendant[s'] refusal to produce the Memorandum which allegedly formed the basis upon which their denial of Plaintiff's mail was predicated, prevented proper notice from being provided and any subsequent timely administrative hearing conducted in a ma[nn]er that complies with the MDOC Mail Policy and Procedure." (*Id.*) Additionally, Plaintiff claims that Defendant Valle "was the proximate cause of Plaintiff's magazines being censored/denied." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First Amendment, and the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. (*Id.*, PageID.6.) Plaintiff also avers that Defendants' actions violated the MDOC's policies and procedures. As relief, Plaintiff seeks compensatory and punitive damages, a declaratory judgment, injunctive relief, and his costs in this suit. (*Id.*, PageID.7–8.)

## II.    Request for Preliminary Injunction

In the "relief" section of Plaintiff's complaint, he states that he seeks a preliminary injunction "ordering the defendants to provide proper notice and timely administrative hearings regarding mail rejection[s]." (Compl., ECF No. 1, PageID.7.)

Preliminary injunctions and temporary restraining orders are some of "the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (citation omitted). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider

whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met.").

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his § 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. Although the Court makes no final determination on this issue, it is not at all clear from Plaintiff's *pro se* complaint that Plaintiff has a substantial likelihood of success on his claims. Accordingly, Plaintiff's request for a preliminary injunction (ECF No. 1, PageID.7) will be denied without prejudice.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

  **A.**  **First Amendment Claim Regarding Rejection of Plaintiff's Magazines**

Plaintiff alleges that Defendants Brown and Valle violated his First Amendment right to the free flow of mail. (*See* Compl., ECF No. 1, PageID.6.)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those

5

First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987). Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. 78.

To determine whether prison restrictions on mail, including books, magazines, and letters, are reasonably related to a legitimate penological interest, the Court must assess the restriction by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89–90.

Here, Plaintiff alleges that on April 1, 2021, he ordered magazines from "Goat Magazine," and the order was approved by non-party Prison Counselor Kanaz. (Compl., ECF No. 1, PageID.3; ECF No. 1-2, PageID.21.) At an unspecified time, Plaintiff spoke with Defendant Brown when Brown was making rounds in Plaintiff's unit. (Compl., ECF No. 1, PageID.3.) "Defendant Brown informed Plaintiff that a memorandum was circulated to the Mailroom, prohibiting Plaintiff's magazines," but that depending on when Plaintiff ordered the magazines, they "would be grandfathered in." (*Id.*) Defendant Brown instructed Plaintiff to write Brown "with the facts pertaining to the date in which Plaintiff ordered his magazines[;] [t]hat if they were ordered prior to the memorandum, Plaintiff's magazines would be grandfathered in." (*Id.*) Plaintiff then wrote to Defendants Brown and Valle, as well as non-party Prison Counselor McBride, requesting a copy

6

of the memorandum, but Plaintiff did not receive a copy of the memorandum. (*See id.*, PageID.3–4.) Subsequently, Plaintiff received a "Notice of Package/Mail Rejection" for the dates of May 14, 2021, and August 18, 2021, which was issued by Defendant Valle. (*Id.*, PageID.4; ECF No. 1-2, PageID.22.) Plaintiff claims that the rejected magazines were improperly rejected because they were sent through the United States Postal Service, "did not pose a threat to the safety or security of the facility," and "conformed with the MDOC policy and procedures." (Compl., ECF No. 1, PageID.4.)

### 1. Defendant Brown

With respect to Defendant Brown, the only actions that Plaintiff attributes to Brown are as follows: Brown "informed Plaintiff that a memorandum was circulated to the Mailroom, prohibiting Plaintiff's magazines"; Brown instructed Plaintiff to write Brown "with the facts pertaining to the date in which Plaintiff ordered his magazines" to see if they could "be grandfathered in"; and Plaintiff wrote to Defendants Brown and Valle, as well as non-party Prison Counselor McBride, requesting a copy of the memorandum, but he did not receive a copy. (*See id.*, PageID.3–4.)

As an initial matter, Plaintiff does not indicate whether the memorandum in question was issued throughout the entire MDOC or whether it was specific to KCF. Because Plaintiff alleges no facts about who issued the memorandum, Plaintiff necessarily fails to allege any facts to suggest that Defendant Brown was involved in its issuance. Further, although Plaintiff alleges that Defendant Brown told Plaintiff to write to him to see if Plaintiff's magazines could be "grandfathered in," Plaintiff does not allege that he in fact wrote to Brown seeking this relief. Therefore, Plaintiff fails to allege sufficient facts to show that Defendant Brown had any involvement in determining whether Plaintiff could receive the magazines in question. Additionally, with respect to the fact that Plaintiff did not receive a copy of the memorandum after

7

he had requested it, the failure to provide Plaintiff with a copy of the memorandum does not in itself violate any of Plaintiff's constitutional rights.[1] Therefore, Plaintiff fails to show that Defendant Brown engaged in any active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

Moreover, to the extent that Plaintiff seeks to hold Defendant Brown liable due to his supervisory position, government officials, such as Brown, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

---

[1] *See also infra* Section III.B.1 (addressing Plaintiff's Fourteenth Amendment due process claims).

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff alleges in a conclusory manner that "Defendant Brown knew or should have known that the Plaintiff was denied his magazines[] without proper notice," and that "Brown's failure to take the appropriate [unspecified] corrective action is tantamount to directly participating in the denial of Plaintiff's rights." (Compl., ECF No. 1, PageID.4.) However, Plaintiff fails to allege any *facts* showing that Defendant Brown encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Because Plaintiff has failed to allege sufficient facts to show that Defendant Brown engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against him.

Accordingly, for all of the reasons set forth above, Plaintiff's First Amendment mail interference claims against Defendant Brown will be dismissed.

### 2. Defendant Valle

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Here, Plaintiff's allegations suggest that Defendant Valle issued the notice of rejection for the magazines in question, and Plaintiff alleges that this rejection was improper. Although Plaintiff has by no means proven his claim, on initial review, the Court will not dismiss Plaintiff's First Amendment claim against Defendant Valle regarding the rejection of his magazines.

### B. Fourteenth Amendment Claims

#### 1. Due Process Clause Claims

Plaintiff also alleges that his due process rights were violated when the magazines in question were rejected. (*See, e.g.*, Compl., ECF No. 1, PageID.6.)

9

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Further, the elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

It is well established that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. 401). The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection. *Martin v. Kelley*, 803 F.2d 236, 243–44 (6th Cir. 1986). The regulation "must also provide for an appeal of the rejection decision to an impartial third party." *Id.* at 244.

Here, Plaintiff states that he received a "Notice of Package/Mail Rejection" for the magazines. (Compl., ECF No. 1, PageID.4.) Plaintiff alleges that he did not receive "proper notice," claiming that because Defendants refused "to produce the Memorandum which allegedly formed the basis upon which their denial of Plaintiff's mail was predicated, [this] prevented proper notice from being provided and any subsequent timely administrative hearing [being] conducted in a ma[nn]er that complie[d] with the MDOC Mail Policy and Procedure." (*Id.*) However, Plaintiff

10

does not claim that he did not receive a hearing, and he attached a hearing report for the rejected magazines to his complaint. (*See id.*, ECF No. 1-2, PageID.24.) Instead, it is clear from Plaintiff's complaint and the attachments to his complaint that he received the process which he was due. Plaintiff acknowledges that he received a notice of mail rejection for the magazines in question (*id.*), and that he was provided a hearing where he had the opportunity to challenge the rejection. (*See, e.g.*, ECF No. 1-2, PageID.24, 28, 29.) And, MDOC Policy Directive 05.03.118 also allows for appeal of the decision. MDOC Policy Directive 05.03.118 ¶¶ EEE, FFF (eff. Mar. 1, 2018). Although it is clear that Plaintiff wanted to receive a copy of the memorandum, the failure to provide Plaintiff with a copy of the memorandum, on its own, does not violate Plaintiff's due process rights because Plaintiff was only entitled to notice of the mail rejection, the opportunity to challenge the rejection, and an appeal of the rejection, which the facts alleged in the complaint show that he received. Further, although Plaintiff vaguely alleges that "the document was never re-reviewed with [him,] providing him with proper notice of any subsequent hearing," Plaintiff fails to provide any further facts to support this assertion. (Compl., ECF No. 1, PageID.4.) Under these circumstances, Plaintiff's vague allegation without any support facts or explanation is insufficient to show any violation of Plaintiff's due process rights.

Moreover, to the extent Plaintiff claims that by rejecting the magazines, he was deprived of property without due process of law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations

of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (eff. Apr. 26, 2021); MDOC Policy Directive 04.02.110, ¶ E (eff. Nov. 1, 2017). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property. Plaintiff, therefore, Plaintiff fails to state a Fourteenth Amendment due process claim regarding the deprivation of his property.

Accordingly, for all of the reasons set forth above, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

### 2. Equal Protection Clause Claims

Plaintiff alleges that Defendants Brown and Valle violated his right to equal protection because "similar[ly] situated individuals in the MDOC are provided the necessary and timely notice and administrative hearing." (*See, e.g.*, Compl., ECF No. 1, PageID.6.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff alleges in a conclusory manner that he was treated differently than other "similar[ly] situated individuals in the MDOC," however, he fails to allege any *facts* to show that the others were in fact similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly

13

conclusory, and he has alleged no facts that plausibly show that the others were similarly situated in all relevant respects.

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment equal protection claims will be dismissed.

### C.    Claims Regarding Violation of the MDOC's Policies and Procedures

Plaintiff claims that the actions of Defendants Brown and Valle violated the MDOC's policies and procedures. (*See, e.g.*, Compl., ECF No. 1, PageID.4–5.)

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants the MDOC's policies fail to state a claim under § 1983.

Moreover, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

Accordingly, for the reasons set forth above, Plaintiff's claims regarding the violation of the MDOC's policies and procedures will be dismissed.

### D. State Law Claims

Finally, Plaintiff alleges that the actions of Defendants Brown and Valle constituted an unspecified "state tort." (Compl., ECF No. 1, PageID.6.)

As discussed above, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States," not state law. *Lugar v*, 457 U.S. at 924; *Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166. Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendant Brown will be dismissed. Further, Plaintiff's reference to an unspecified "state tort" is insufficient to show that any intended state law claim against remaining Defendant Valle is related to Plaintiff's remaining federal claim against Valle. The balance of the relevant considerations therefore weighs against the continued exercise of supplemental jurisdiction over the state law claims. Accordingly, any intended state law claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

### Conclusion

Plaintiff's request for a preliminary injunction (ECF No. 1, PageID.7) will be denied without prejudice. Further, having conducted the review required by the PLRA, the Court determines that Defendant Brown will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to

15

state a claim, the following claims against remaining Defendant Valle: Fourteenth Amendment due process and equal protection claims, and claims regarding the violation of the MDOC's policies and procedures. Any intended state law claims will be dismissed without prejudice. Plaintiff's First Amendment claim against Defendant Valle regarding the rejection of his magazines remains in the case.

 An order consistent with this opinion will be entered.


Dated: August 9, 2024      /s/ Robert J. Jonker
                 Robert J. Jonker
                 United States District Judge